IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEITH R. SULLIVAN,

               Plaintiff,

    vs.                             Civil Action 2:12-CV-785
                                      Judge Graham
                                      Magistrate Judge King

CAROLYN COLVIN, Commissioner
of Social Security,

               Defendant.

## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383(c), for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 14, the Commissioner's *Memorandum in Opposition*, Doc. No. 19, and plaintiff's *Reply*, Doc. No. 20.

Plaintiff Keith R. Sullivan filed his applications for benefits on December 31, 2008, alleging that he has been disabled since November 1, 2008, as a result of a fractured and fused ankle, unequal leg length, post traumatic degenerative arthropathy, lower back pain, pelvis and joint pain and bulging discs. *PAGEID* 250. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

A video hearing was held on January 7, 2011, at which plaintiff, represented by counsel, appeared and testified, as did Robin Cook,

who testified as a vocational expert.[1] In a decision dated February 25, 2011, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. *PAGEID* 60-70. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 13, 2012. *PAGEID* 53-56.

Plaintiff was 42 years old on his alleged disability onset date. *PAGEID* 244. He has a high school education and past relevant work experience as a laborer and residential and commercial painter. *PAGEID* 136, 251, 254. He has not engaged in substantial gainful activity since his alleged onset date of November 1, 2008. *PAGEID* 62. His insured status for disability insurance purposes lapsed on December 31, 2011. *PAGEID* 60.

In May 1990, plaintiff suffered a fracture of the left medial malleolus in an industrial accident. *PAGEID* 345. In April 1995, he underwent a left ankle joint fusion, *PAGEID* 380-81, and in December 1995, he underwent a revision fusion for persistent non-union of the fracture, *PAGEID* 374-5.  Fusion was still delayed in June 1996, *PAGEID* 358, and in January 1997, plaintiff underwent a percutaneous bone graft. *PAGEID* 362. In December 1998, hardware was removed from his left ankle. *PAGEID* 355-56.

---

[1]Because the resolution of the issues presented in this case do not turn on the vocational expert's testimony, the Court will not summarize that testimony. Similarly, because plaintiff challenges only the Commissioner's assessment of plaintiff physical impairments, the Court will not address the evidence relating to plaintiff's mental impairments.

Terrence Philbin, D.O., an orthopedist, began treating plaintiff on June 25, 2003 for left ankle pain.  On clinical examination, Dr. Philbin noted an obvious deformity, an antalgic gait, decreased range of motion in the left hindfoot and a slight plantar flexion in the resting position. Plaintiff was able to bear weight only partially.  A July 2003 CT scan of the left lower extremity documented status post arthrodesis of the tibiotalar joint with severe degenerative changes involving the subtalar joint at the posterior and middle facets. *PAGEID* 435-36. Dr. Philbin diagnosed status post pilon fracture of the left ankle with subsequent fusion of the tibiotalar joint, advanced degenerative arthritis in the subtalar joint and moderate arthritis of the talonavicular joint. *PAGEID* 438-39. Dr. Philbin recommended a triple arthrodesis. *PAGEID* 434.

In 2004, Plaintiff's treating family physician, Teresa Quinlin, M.D., diagnosed gait disturbance secondary to leg length discrepancy producing a musculoskeletal strain of the lumbar and pelvic girdle. *PAGEID* 405-15.

Martin Andrews, M.D., a pain specialist, treated plaintiff from October 2005 to January 2011. *PAGEID* 403-04, 446-80, 487-88, 493, 538-39, 550-53, 591-606, 643-47, 658-64, 686, 701-02.  On clinical examination, Dr. Andrews noted palpable tenderness over plaintiff's left ankle, a positive straight leg raise on the left, and diffuse lumbar tenderness throughout. *Id.* Dr. Andrews administered epidural

3

steroid injections. A January 2006 MRI of the lumbosacral spine showed moderate broad based bulging at L5-S1 without objective stenoses, minimal broad based bulging at L4-5, L3-4, and L2-3 without objective stenoses, and a long thin epidural lipoma posteriorly. *PAGEID* 396-97. In February 2006, Dr. Andrews commented that the shorter length of plaintiff's left leg, a result of his numerous surgeries, caused an altered gait. *PAGEID* 493.

In January 2011, Dr. Andrews completed a Chronic Pain Residual Functional Capacity Questionnaire. *PAGEID* 696-700. Dr. Andrews reported a reduced range of motion, positive straight leg raising, tenderness, muscle spasm and abnormal gait. *PAGEID* 696. Plaintiff's prognosis was fair. *PAGEID* 696. According to Dr. Andrews, plaintiff could walk 1 city block without rest or severe pain, could sit for more than 2 hours at a time and could stand for 30 minutes at a time. Plaintiff could stand or walk for a total of 2 hours and could sit for a total of 4 hours in an 8-hour workday. Plaintiff would require the opportunity to walk and to change positions at will. He would also need to lie down at unpredictable intervals during a work shift. Plaintiff could never lift and carry more than 20 pounds. *PAGEID* 699. He could not bend and twist at the waist. Finally, Dr. Andrews opined that plaintiff would be absent from work more than 3 times per month due to his impairments. *Id.*

Herbert Grodner, M.D., examined plaintiff on March 13, 2009 at the request of the state agency. *PAGEID* 496-502. Plaintiff had an

antalgic gait, could not squat and could toe and heel walk only with
his right foot. X-rays of the left ankle revealed surgical changes
with screws and osteopenia and arthropathic changes. X-rays of the
lumbar spine revealed no evidence of compression fracture,
spondylosis or spondylolisthesis. *PAGEID* 497. Dr. Grodner also
referred to an MRI that revealed "some evidence of discogenic
disease." *PAGEID* 498. There was a 2 inch discrepancy in the length
of plaintiff's legs and atrophy of the left ankle. Range of motion
of the lumbar spine was mildly decreased. *PAGEID* 497. Dr. Grodner
diagnosed arthrodesis of left ankle and post-traumatic arthritis with
osteopenia. He commented that plaintiff had essentially no movement
of the left ankle and that the limb length discrepancy caused pain
and swelling in plaintiff's ankle, lower back and left hip.
Characterizing chronic pain as "one of [plaintiff's] major problems,"
*PAGEID* 498, Dr. Grodner opined that plaintiff would "have difficulty"
with any weight bearing activity, with walking or standing more than
20 or 30 minutes and with any climbing, kneeling, or squatting. Dr.
Grodner specifically stated, "He probably could perform some type of
sedentary activity but, because of his lower back pain, he may have
some difficulty." *Id.* Plaintiff might also need to change positions
frequently. *Id*.

In May 2009, Myung Cho, M.D., a state agency physician, reviewed
the record and concluded that plaintiff's subjective complaints of
pain were credible and not disproportionate to the objective

evidence.  *PAGEID* 526.  According to Dr. Cho, plaintiff can  lift and carry up to 10 pounds occasionally, can stand or walk at least 2 hours, and can sit about 6 hours in an 8-hour workday.  He must periodically alternate between sitting and standing to relieve pain. He would be limited in his ability to use his legs. *PAGEID* 522.  He could never climb ladders, ropes or scaffolds, and could only occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl.  *PAGEID* 523.  He should not work around unprotected heights. *PAGEID* 525.

In June 2009, plaintiff underwent a consultative evaluation, upon referral from Bureau of Workers' Compensation, by William Grant, M.D. Plaintiff complained of constant pain, which he rated a 7 on a 10-point scale, involving his left ankle. Vicodin, which plaintiff takes several times per day, diminishes the pain to a 5. Standing on his left leg for more than 10 minutes at a time is unbearable.  He also experiences edema of the left leg. Dr. Grant noted only limited movement of the left foot and a two-inch discrepancy in leg lengths. That discrepancy has caused herniated discs at L2-3, L-4, L4-5 and L5-S1. *PAGEID* 548. According to Dr. Grant, plaintiff can stand no longer than 10 minutes, can walk no farther than a few yards on a level surface, cannot climb or descend stairs, cannot climb a ladder, cannot stoop, squat, crawl or kneel, and cannot sit for longer than 20 minutes without experiencing increasing pain. *PAGEID* 549. Plaintiff cannot lift and carry any weight greater than 5 pounds. *Id.* Dr. Grant

expressly opined that plaintiff is permanently and totally disabled
and unable to perform sustained employment *Id.*

State agency physician, W. Jerry McCloud, M.D., evaluated
plaintiff's physical residual functional capacity on October 22,
2009. *PAGEID* 608-15. According to Dr. McCloud, plaintiff can lift 20
pounds only occasionally and 10 pounds frequently; he can stand or
walk at least 2 hours in an 8-hour workday, and can sit for a total
of 6 hours in an 8-hour work day. *PAGEID* 609.  Plaintiff can never
climb a ladder, rope or scaffolds and can only occasionally climb
ramps and stairs, balance, stoop, kneel, crouch and crawl. *PAGEID* 610.
Plaintiff should avoid all exposure to hazards.  *PAGEID* 612. Dr.
McCloud opined that plaintiff's statements were credible. *PAGEID* 613.

William Bolz, M.D., another state agency physician, also
reviewed the record in November 2009 and opined that plaintiff could
occasionally lift 20 pounds and frequently lift 10 pounds, could stand
and/or walk at least 2 hours in an 8-hour workday, for no more than
30 minutes at a time, and could sit about 6 hours in an 8-hour workday.
*PAGEID* 617. Plaintiff could never climb ladders, ropes, or scaffolds,
nor could he kneel or crouch. *PAGEID* 618. Plaintiff should avoid all
exposure to hazards, especially uneven terrain and unprotected
heights. *PAGEID* 620. He should be permitted to change position as
needed.  *PAGEID* 618.

Plaintiff testified at the administrative hearing that he
experiences pain, which he rated as 8 on a 10-point scale. *PAGEID* 123.

Vicodin takes the edge off his pain.  *PAGEID* 123-24. He also has pain in his left leg and left hip. *PAGEID* 124. His pain makes it difficult to concentrate when he watches television and reads. *PAGEID* 127-28. He lives in a second floor apartment but must use the handrail and take a break when he climbs the stairs to his apartment. *PAGEID* 114-15. He leaves his apartment twice a week to go to the grocery store and the laundromat. *PAGEID* 116. He needs help carrying his groceries and laundry up and down the stairs. *Id.* He relies on his girlfriend to complete his household chores. *PAGEID* 125. Because of the unequal length of his legs, he has difficulty with his back, particularly in lifting any weight. *PAGEID* 117.  He must frequently change positions. *PAGEID* 118-19.

Plaintiff estimated that he can walk for 10 minutes before needing to sit. *PAGEID* 119. He can sit for 30 minutes at a time. *PAGEID* 120. He must lie down once or twice a day, for 15 to 20 minutes, because of pain. *PAGEID* 122-23. He uses a cane occasionally, although a cane has not been prescribed for him. *PAGEID* 139-40.  Plaintiff does not believe that he can perform even sedentary or light work because of his back pain. *PAGEID* 140-41.

In his decision, the administrative law judge found that plaintiff's severe impairments consist of history of left ankle fracture; status post left ankle fusion with a history of surgical procedures to correct nonunion; degenerative disc disease of the lumbar spine; status post steroid injections; and a history of

8

generalized anxiety. *PAGEID* 62.    However,  plaintiff's  severe
impairments neither meet nor equal a listed impairment. *Id.*

The  administrative  law  judge  found  that  plaintiff  has  the
residual functional capacity to perform a reduced range of sedentary
work:

> [T]he claimant can lift and/or carry up to 10 pounds
> occasionally and up to 5 pounds frequently, sit for up to
> 4 hours at a time, for a total of 6 hours during an 8-hour
> workday, and can stand and/or walk for up to 30 minutes at
> a time, for a total of 2 hours during an 8-hour workday.
> The claimant requires the option to change positions every
> 30 minutes for up to 15 minutes at a time, cannot climb
> ladders, ropes or scaffolds, is limited to only occasional
> (up to one third of the day) balancing, stooping, kneeling,
> crouching and crawling, and must avoid uneven surfaces.
> Furthermore, the claimant is limited to performing simple,
> unskilled, repetitive tasks with no more than occasional
> (up to one third of the day) interaction with the
> supervisors, co-workers and the public.

*PAGEID* 64.

Finding that this residual functional capacity precluded the
performance of plaintiff's past relevant work, *PAGEID* 68, the
administrative law judge relied on the vocational expert's testimony
to find that plaintiff is nevertheless able to perform other work that
exists in significant numbers in the national economy. *PAGEID* 69.
Accordingly, the administrative law judge concluded that plaintiff
is not disabled within the meaning of the Social Security Act.   *PAGEID*
70.

Pursuant  to  42  U.S.C.  §405(g),  judicial  review  of  the
Commissioner's  decision  is  limited  to  determining  whether  the
findings of the administrative law judge are supported by substantial

9

evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In his *Statement of Errors*, plaintiff contends that the administrative law judge failed to properly evaluate the opinion of Dr. Andrews, plaintiff's treating pain specialist. *Statement of Errors*, Doc. No. 14 at *PAGEID* 717.

The opinion of a treating physician must be accorded controlling weight if it is "well-supported by medically acceptable clinical and

laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013); *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007). If the administrative law judge declines to accord controlling weight to the opinion of a treating physician, the administrative law judge "must still determine how much weight is appropriate. . . ." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). In making this determination, the administrative law judge must consider such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2) - (6); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004).  Moreover, an administrative law judge must provide "good reasons" for discounting the opinions of a treating physician, *i.e.,* "reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, at 376; *Rogers*, at 242, citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

Here, the administrative law judge gave "little weight" to the opinions of Drs. Andrews and Grant, characterizing their opinions as

"incompatible with the manifest weight of the evidence and . . . not adequately account[ing] for the claimant's activities of daily living." PAGEID 68. Specifically, the administrative law judge afforded only "partial weight" to Dr. Andrews' opinion, characterizing that opinion as "inconsistent with the opinions of Dr. Grodner and the State agency consultants and the claimant's acknowledged activities." *PAGEID* 66. He gave "no significant weight" to the opinions of Dr. Grant, the Workers' Compensation examiner who characterized plaintiff as totally disabled, because that opinion "is completely irreconcilable" with the claimant's own statements and testimony.

> In his function report [*PAGEID* 260-67], the claimant stated that he could lift up to 15-20 pounds, could attend to dishes and laundry, and could drive to the grocery store and attend church weekly. At the video hearing, the claimant testified that he lives on the second floor and has to climb stairs to reach his apartment, albeit with some difficulty.

*PAGEID* 66. Instead, the administrative law judge gave "significant evidentiary weight" to the opinion of Dr. Grodner, because it was based on objective testing and observation and is "generally consistent with the overall evidence of record." *PAGEID* 68. Although the administrative law judge stated that he gave "moderate weight" to the opinion of Dr. Cho, one of the state agency physicians who reviewed the record, because it "is largely accurate, and is consistent with the overall evidence of record," the administrative law judge also stated that plaintiff "is limited to a slightly greater

extent than that determined by Dr. Cho." *Id*.

This Court concludes that the administrative law judge failed to properly evaluate the medical source opinions. It is not apparent that the opinions of Drs. Andrews and Grant are inconsistent with the other substantial evidence of record. All physicians who have examined plaintiff, including Dr. Grodner, have noted the significant disparity in the lengths of plaintiff's legs and the resulting back impairment and chronic pain. Even Dr. Grodner opined that plaintiff could not walk or stand more than 20 to 30 minutes. *PAGEID* 498. Moreover, the administrative law judge's quote of Dr. Grodner's opinion, *PAGEID* 65 ("claimant '*probably could perform some type of sedentary activity*.'" (emphasis in original)), was not entirely accurate. Dr. Grodner actually stated that plaintiff "probably could perform some type of sedentary activity *but, because of his lower back pain, he may have some difficulty*." *PAGEID* 498 (emphasis in original). Under these circumstances, the Court concludes that the decision of the Commissioner must be reversed and the matter must be remanded for further consideration of the medical source opinions.

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed and that the matter be remanded to the Commissioner pursuant to Sentence 4 of 42 U.S.C. § 405(g) for further consideration.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file

and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

June 12, 2013                           *s/Norah McCann King*
                                        Norah McCann King
                                        United States Magistrate Judge

14